MILO SMITH *et al.*, Appellants, v. ISAAC BALDWIN *et al.*, Appellees.

1. **Former Adjudication:** MATTERS IN ISSUE: CONSTRUCTION OF DECREE. Certain city lots numbered ten and eleven being owned by S., and the adjoining lot numbered twelve being owned by B., a single building was by agreement erected upon the three lots, the second story on lots ten and eleven being used as an opera house, with the entrance thereto, and dressing rooms used in connection therewith, on lot twelve. Thereafter it was agreed to hold said property in common, an undivided fifty-two one-hundredths being given to S., and an undivided forty-eight one hundredths given to B. Subsequently a mortgage given by B. on lot twelve, when owned by him, being foreclosed, and no redemption made, S. procured an assignment of the sheriff's certificate, and obtained a deed to lot twelve in pursuance thereof. B. having commenced an action for an accounting against S., and to compel him to convey to him forty-eight one-hundredths of said lot twelve, it was decreed that S. held absolute title thereto, and said title was quieted against all claims of B. Afterwards this action being commenced by S. for a partition of lots ten and eleven, *held*, that a decree that said stairway and dressing rooms on lot twelve should be used in common by S. and B., and their heirs, was error, as the rights of B. in lot twelve had been fully adjudicated in the former action for an accounting.

2. **Judgment**: RECORD: SIGNATURE AND APPROVAL: VALIDITY. Where the original draft of a decree was approved by the judge, and entered by the clerk, at the request of both parties, *held,* that it was immaterial that the record thereof had never been read, and signed and approved by the judge.

*Appeal from Clinton District Court.*—HON. W. F. BRANNAN, Judge.

TUESDAY, MAY 24, 1892.

THIS is an action in equity, by which the plaintiff Milo Smith demands the partition of certain real estate, which he claims he owns in common with the defendant Isaac Baldwin. There was a decree establishing the respective shares and interests in the property. The plaintiff appeals.—*Reversed.*

*Ellis & McCoy,* for appellant.

*R. R. Baldwin,* for appellee.

ROTHROCK, J.—I. It appears from the record and evidence, that, in the year 1865, the plaintiff, Milo Smith, was the owner of lot ten, in block four, in the city of Clinton, and that said Smith and one Cushing were the owners of lot eleven, and that the defendant, Isaac Baldwin, owned lot twelve in said block. The said lots were twenty-five feet wide, and one hundred feet long, and adjoined each other so as to make a front of seventy-five feet, and a depth of one hundred feet. Lot twelve was on a street corner, and lots eleven and ten are inside lots. By a common arrangement among the owners a three-story building was erected which covered the whole width of the three lots, and extended back from the front a distance of eighty feet. The building was so constructed that there was a storeroom on each lot, in the first story of the building. The sec-

1. FORMER adjudication: matters in issue: construction of decree.

ond story was arranged for an opera house, or place of public amusement. The main hall or audience room, was over lots ten and eleven, and the entrance and approaches from the street were by stairway from the street, across lot twelve. A part of the second story over lot twelve was also used for a ticket office, and such room as was necessary for ingress and egress from the audience room. The other rooms in the second story were used as office rooms, excepting that one was appropriated for a dressing room in connection with the opera house. It does not appear that there was any use of the third story in common. The common use of the property was confined to the opera house and its approaches. This being the condition of the property, the several owners of the lots, on the fourteenth day of June, 1876, entered into an agreement in these words:

"The owners of the property known as 'Union Hall,' being lots numbers ten, eleven and twelve, in block four, in Clinton, Iowa, have this day mutually agreed among each other that their separate and several interests are as follows: "Isaac Baldwin is the owner of the undivided forty-eight one-hundreths (48-100) parts thereof, Milo Smith is the owner of the undivided thirty-three one-hundredths (33-100) parts thereof, and Albertus C. Capron is the owner of the undivided nineteen one-hundredths (19-100) parts thereof; and the same is now held and owned by them as tenants in common. Signed in triplicate.

"CHARLOTTE A. SMITH.

"MILO SMITH.

"ELIZABETH BALDWIN.

"ISAAC BALDWIN.

"A. C. CAPRON.

"CLINTON, IOWA, June 14, 1876."

This agreement was duly acknowledged by the parties, and it is not disputed that it was a valid and binding contract. In July, 1879, the plaintiff became

the owner of Cushing's interest in the property, so that Smith owned fifty-two one-hundredths, and Baldwin owned forty-eight one-hundredths. Prior to entering into the agreement by which the common interests of the parties were fixed, Baldwin had given two mortgages on lot twelve. The mortgages were foreclosed by the owner thereof, and lot twelve was sold on foreclosure. After the period of redemption had expired, the certificate of sale was assigned to Smith, who procured a sheriff's deed therefor. In 1886 Baldwin commenced an action against Smith, in which he asked that Smith be compelled to account to him, and to convey to him forty-eight one-hundredths of lot twelve; in other words, he claimed that Smith should be held to have taken the title by the mortgage foreclosure for the benefit of Baldwin. This relief was not granted to Baldwin, but it was held that Smith was the absolute owner of lot twelve, and the title thereto was quieted in him. It was further decreed that Baldwin was the owner of forty-eight one-hundredths of lots ten and eleven. Afterwards the plaintiff Smith commenced this action for a partition of lots ten and eleven; and as said lots were not susceptible of division, it was sought to have said lots sold, so that the purchaser would have no right in lot twelve, and he prayed that the defendant Baldwin be decreed to have no right therein.

The court below heard the cause upon its merits, and by its decree fixed the rights and interests of the parties as follows: "It is found and adjudged by the court that the plaintiff Milo Smith and defendant Isaac Baldwin are the owners in fee simple of lots ten (10) and eleven (11), in block four (4), in the city of Clinton, Iowa, and that said Milo Smith is the owner of an undivided fifty-two one-hundredths ( 52-100 ) thereof, and the said Isaac Baldwin of an undivided forty-eight one-hundredths (48-100) thereof; and that

all of the dressing rooms and other rooms in and upon the second floor of the building upon the lot owned by Milo Smith adjoining on the south, viz: lot twelve (12), in said block four (4), and the hallway, area, and stairway landing on said second floor of building on said lot twelve (12), and the inside stairway leading from the second floor of said lot twelve, down to Fifth avenue, and used as the general entrance to and exit from said opera house, and the outside stairway in the rear of the said building on lot twelve (12), all of which the court finds have always been used in connection with, and are necessary appurtenances to, said opera house hall, and to be used by said owners in common, their heirs and assigns, jointly with said Smith, owner of said lot twelve (12), his heirs and assigns, so long only as said opera house thereon is used as a public hall, and until other arrangements are made."

The plaintiff insists that the decree imposing a burden by way of an easement on lot twelve, which operates to the advantage of the defendant by conferring upon him an interest in the lot, is wrong, because the rights of the parties in lot twelve were fully and completely adjudicated by the former suit, in which Baldwin was the plaintiff, and Smith the defendant. It appears to us that this position must be sustained. That part of the decree in the former case which appears to us to be a final adjudication of the rights of the parties to each and every part of lot twelve, and to any and all claim thereto, is as follows: "It is therefore considered, adjudged and decreed by the court that plaintiff's petition, in so far as it relates to lot twelve (12) aforesaid, and seeks a conveyance of an interest therein from defendant, and an accounting as to the profits therefrom for its rents and net income, be and the same is hereby dismissed, and said relief prayed be, and the same is hereby, denied, and the title to lot twelve (12), in block four (4), in the city of Clinton,

Clinton county, Iowa, be and the same is hereby con-
firmed and quieted in said defendant free from any and
all claims, legal or equitable thereto, or any part thereof,
of said plaintiff, his heirs or assigns, to which the plain-
tiff at this time duly excepts." Surely the right to the
use of the stairway and nearly the whole of the sec-
ond story of that part of the building which stands on
lot twelve is a most important interest therein, and the
adjudication thus made was squarely within the issues
as raised by the pleadings. It is true the plaintiff in
that action did not claim that he was entitled to an
easement in lot twelve, and the defendant did not deny
that fact, but each party claimed to be the owner of
the lot. This included the full ownership, as well as
all claims of any interest in the property.

It is needless to cite authority in support of the
fundamental rule that, where rights of property are
once adjudicated in action between the same parties,
it is the end of all legal controversy touching the same
question, and the matter must be considered as forever
at rest. In the case at bar the adjudication was, in a
sense, direct and express. But, if this were not so,
the law is well settled that a party cannot relitigate
matters which he might have had determined in the
former case. *Hackworth v. Zollars*, 30 Iowa, 433;
*Ebersole v. Lattimer*, 65 Iowa, 164; *Willard v. Calhoun*,
70 Iowa, 653; *Bates v. Spooner*, 45 Ind. 493; *Ewing v.
McNairy*, 20 Ohio St. 322. There are probably cases
where, although the question was within the pleadings,
the decree or judgment affirmatively shows that the
matter was not adjudicated, it has been held that there
is no adjudication. But we think that where the
matter in controversy is fairly in issue, and is embraced
in the judgment and decided, although the judgment
may be general, and not specific upon the very ques-
tion, the rule is uniform that it is the end of all con-
troversy on that matter. It is not a question to be

determined whether that decree was right or wrong. When Baldwin made his claim to lot 12 in the former action, and when Smith, in his answer and cross-petition, claimed that by reason of his title under the sheriff's deeds "all the interest of said plaintiff (Baldwin) in said property became absolutely extinguished," and prayed that his (Smith's) "title thereto be by decree herein established and quieted in him as against any and all claims and pretenses to interest of plaintiff therein," Baldwin was called upon to make any claim of any interest which he had; and not having done so, and having permitted the decree to be entered as it was, he is forever estopped from questioning its validity. It is to be remembered that Baldwin claims an interest in the property. It is not a mere claim for reimbursement for payment of taxes on the land, as in *Merrill v. Tobin*, 82 Iowa, 529. It is an interest in the land itself, and not a mere lien to be worked out and established by the aid of a court of chancery. It should have been claimed when it was sought to quiet Smith's title and cut off all or any interest which Baldwin had in the lot.

II. The decree in the former suit was entered on the ninth day of November, 1887, and this suit was commenced on the sixth day of April, 1889. On the twenty-third day of the same month the said Baldwin filed a motion to amend the said decree by striking out that part of it which quiets the title to lot 12 in said Smith, on the ground that the decree assumes to determine issues which did not arise in the action. There was no notice of this motion given to the plaintiff herein, and it does not appear that it has at any time been submitted to the district court for determination. It is claimed that the defendant had the right to make the motion because the record entry of said decree had never been read, approved or signed by the

2. JUDGMENT: record: signature and approval: validity.

court. But it appears that the original draft of the decree was approved by the judge who tried the cause, and that it was entered by the clerk by the written request of counsel for both the parties. We must accept the decree as a verity.

It appears to us that this is an end of the case, and that the decree of the district court must be REVERSED.